An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1373
NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

STATE OF NORTH CAROLINA

v.

LUIS GUSTAVO LICONA ROSALES

Burke County
No. 11 CRS 2419, 52565

Appeal by Defendant from judgments entered 26 April 2013 by Judge Eric L. Levinson in Superior Court, Burke County. Heard in the Court of Appeals 20 May 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Teresa M. Postell, for the State.*
>
> *Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Anne N. Gomez, for Defendant.*

McGEE, Judge.

Luis Gustavo Licona Rosales ("Defendant") was found guilty on two counts of first-degree statutory rape or sex offense. Defendant received two active sentences of 160 months to 201 months, to run consecutively. Defendant appeals.

The State's evidence at trial tended to show that Defendant first met the alleged juvenile victim ("the child") in 2010, at

the home of the child's aunt, when the child was thirteen years old. After Defendant became a friend of the child's mother and stepfather, he saw the child more frequently. Defendant was riding home from the mall one evening with the child and the child's family, when Defendant used the child's hand to "masturbat[e] himself." Defendant continued to see the child regularly. He played with the child almost every other day, teaching the child soccer, and participating in trips with the child's family.

The child testified that he saw Defendant as: "A father figure." The child testified that, when he was thirteen or fourteen years old, Defendant anally penetrated him with his penis at the child's apartment while the child's parents were at work. Defendant began going to the child's apartment every day. Defendant would often watch television and pornography with the child and talk to the child about sex, in an attempt to make the child feel more comfortable with sexual contact. Defendant continued to anally penetrate the child until just after the child turned fifteen years old.

The child further testified he had previously been sexually abused when he was six or seven years old and living in Honduras. When the child was approximately fourteen years old, he told his mother about the prior abuse in Honduras, but did not tell her that Defendant had been abusing him. The child's

mother took him to Betsy Hurd ("Ms. Hurd"), a licensed practitioner of "trauma-focused cognitive behavioral therapy." The child, through journal entries, wrote about Defendant's abuse, which indicated what Defendant had allegedly done to him. After reading the child's journal entries, Ms. Hurd reported the information to the child's mother, contacted the police, and arranged a medical interview. Defendant was arrested and charged with two counts of first-degree statutory sexual offense and two counts of indecent liberties with a child. Defendant pleaded not guilty to all four charges. Defendant was convicted on both first-degree statutory sexual offenses and was found not guilty on the two charges of indecent liberties. Defendant appeals.

I.

In Defendant's first argument, he contends the trial court committed error, or plain error, when it allowed an expert witness for the State to testify that her physical examination of the child was consistent with the child's testimony, thereby improperly bolstering the credibility of that testimony. We disagree.

Elizabeth Browning ("Ms. Browning"), was a registered and certified nurse "for adult[,] adolescent . . . and . . . pediatric sexual assault nursing." Ms. Browning testified at trial, as an expert, regarding her 31 August 2011 medical

interview and physical examination of the child.  Ms. Browning testified that her physical examination of the child did not yield any physical evidence of abuse; however, Ms. Browning also testified that many victims of sexual abuse do not show signs during their physical examinations because those kinds of injuries tend to heal very quickly.  Ms. Browning gave, *inter alia*, the following testimony relevant to this appeal:

> Q   And when you performed that [physical] examination on [the child], what were the findings that you made on that exam?
>
> . . . .
>
> A   I looked at [the child's] anus. And [the child] had normal anal tone, which is what we look at, and [the child] didn't have any fissures or scars that I noted.
>
> Q   Now, what does that mean, that [the child] had normal anal tone?
>
> A   Just means that it doesn't gape open, that [the child] had what we would call a positive anal wink, which is that the sphincter works correctly.  It will open and shut the way it's supposed to.
>
> Q   Now, ma'am, do you have an opinion as to whether your findings on physical exam were consistent with both [the child]'s disclosure to you at the Gingerbread House, and [the child's] testimony here today?
>
> > [Defendant]: I'll object, Your Honor.
> >
> > THE COURT: You all want to approach for a moment?
> >
> > (Bench conference with [the State] and [Defendant].)

THE COURT: Okay. [The State]?

[The State]: Thank you, Your Honor.

[The State]:

Q   Ma'am, do you have an opinion based on your knowledge, training, and experience, having conducted over 1000 such of these exams, as to whether your physical findings were consistent with both the disclosure given to you by [the child] in August 2011 [at] the Gingerbread House, and with [the child's] testimony here in the courtroom today?

A   I do.

Q   And what is that opinion?

A   They are consistent.

Q   Okay.  Ma'am, you've said that basically the findings about [the child]'s anus were within normal limits.  Explain to the jury, if you would, how that could be, if [the child] had had anal sex with [] Defendant.

A   The anus opens and closes.  We just talked about the sphincter.  We look for that anal wink.  It opens and closes, and it gets really large to accommodate, such as a large bowel movement.  Also, it is a mucous membrane.  Mucous membranes heal very quickly.  It's like your mouth.  If you were to bite your tongue or your cheek, it heals pretty quickly.  So if there had been an injury there, it had been a while and it could have healed.  So it's consistent to not see anything.

. . . .

Q   Ma'am, was [the child]'s testimony today in the courtroom consistent with what [the child] reported to you at the Gingerbread

House?

A   Yes.   It was more than what [the child] reported but yes, it was consistent.

. . . .

[Defendant]:

Q   Ma'am, you stated that [the child] had normal anal tone and no fissures?

A   Yes.

Q   Can you describe to the jury what a fissure is and what it means when there are no fissures?

A   Yes.   A fissure is a little break in the skin that opens up, again, if you have a large bowel movement or there's been maybe, possibly a trauma to that area.   If there is one, we typically don't think much about it because again, they come from large bowel movements or hard bowel movements.   You can get them from constipation.   So it's typically an unremarkable finding.   But we still document whether we see any evidence of one, or one that may have healed.   And in this case, [the child] had no evidence of a fissure.

Q   In this case, you would say that there was no visible evidence of previous injury.

A   Exactly.

. . . .

Q   There were no findings of abuse.   But that's also consistent with non-abuse.

A   Yes.   There were no findings.

Q   Okay.   And you're saying that because there's no findings and there's no visible evidence of a previous injury, it's because

> if there were any injuries, they could have healed?
>
> A  Yes.  They could have.
>
> Q  And there also could not have been any injuries in the first place?
>
> A  That's exactly right.

Defendant contends that Ms. Browning's answer of: "They are consistent" with the following testimony, constituted an improper bolstering of the child's credibility:

> Ma'am, do you have an opinion based on your knowledge, training, and experience, having conducted over 1000 such of these exams, as to whether your physical findings were consistent with both the disclosure given to you by [the child] in August 2011 [at] the Gingerbread House, and with [the child's] testimony here in the courtroom today?

However, Defendant did not object to this question or to Ms. Browning's answer.  Defendant's prior general objection to this question — about which no ruling appears in the record — does not preserve objection to this evidence for appellate review. "A general objection, when overruled, is ordinarily not adequate unless . . . it [is] clear that there is no purpose to be served from admitting the evidence."  *State v. Jones*, 342 N.C. 523, 535, 467 S.E.2d 12, 20 (1996) (citation omitted); *see* N.C.R. App. P. 10(a)(1) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for

the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion."); *see also State v. Eason*, 328 N.C. 409, 420, 402 S.E.2d 809, 814 (1991).

Because Defendant did not preserve this issue for appellate review, but did specifically argue plain error in the alternative, we will conduct our review under the plain error standard. "In criminal cases, an issue that was not preserved by objection noted at trial . . . nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(a)(4). In *State v. Lawrence*, our Supreme Court recently "clarif[ied] how the plain error standard of review applies on appeal to unpreserved . . . evidentiary error[s]." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E2d 326, 334 (2012).

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error "had a probable impact on the jury's finding that the defendant was guilty." Moreover, because plain error is to be "applied cautiously and only in the exceptional case," the error will often be one that "seriously affect[s] the fairness,

> integrity or public reputation of judicial proceedings[.]"

*Id.* (citations omitted). Our Supreme Court held that, in order to show prejudice sufficient to establish plain error, a defendant has to show "that, absent the error, the jury probably would have returned a different verdict." *Id.* at 519, 723 S.E.2d at 335.

Defendant argues that Ms. Browning bolstered the child's credibility when she agreed that her "physical findings were consistent with both the disclosure given to [her] by [the child] in August 2011 [at] the Gingerbread House, and with [the child's] testimony here in the courtroom" and that it rises to the level of plain error. We disagree.

"Expert opinion testimony is not admissible to establish the credibility of the victim as a witness." *State v. Dixon*, 150 N.C. App. 46, 52, 563 S.E.2d 594, 598 (2002). "However, otherwise admissible expert testimony is not rendered inadmissible merely because it enhances a witness's credibility." *In re T.R.B.*, 157 N.C. App. 609, 617, 582 S.E.2d 279, 285 (2003) (citation omitted). "[A]n expert witness may testify, upon a proper foundation, as to the profiles of sexually abused children and whether a particular complainant has symptoms or characteristics consistent therewith." *State v. Stancil*, 355 N.C. 266, 267, 559 S.E.2d 788, 789 (2002)

(citations omitted). "The nature of the experts' jobs and the experience which they possess make them better qualified than the jury to form an opinion as to the characteristics of abused children." *State v. Grover*, 142 N.C. App. 411, 419, 543 S.E.2d 179, 184 (2001) (citation omitted). "Thus, while it is impermissible for an expert, in the absence of physical evidence, to testify that a child has been sexually abused, it is permissible for an expert to testify that a child exhibits 'characteristics [consistent with] abused children.'" *Id.* (citation omitted).

Specifically, Defendant contends that: "Browning's expert evidence did more than assure the jury that [the child]'s physical condition was consistent with his history of sex abuse; by confirming [the child]'s version of events, [Ms. Browning's testimony] also identified Defendant as being the person who abused [the child]." However, Defendant fails to identify any specific testimony of the child that Ms. Browning's testimony bolstered. In fact, Defendant cites none of the child's testimony in his brief. Defendant argues that our Court's opinion in *State v. Streater*, 197 N.C. App. 632, 678 S.E.2d 367 (2009), controls this case. We disagree.

*Streater* is readily distinguishable from the present case. In *Streater*, our Court found the trial court erred when it allowed an expert to testify "it was [the] defendant who

repeatedly abused the victim whe[n] no such physical evidence exist[ed]." *Streater*, 197 N.C. App. at 642, 678 S.E.2d at 374. Accordingly, we noted in part that "it [was] the specific identification of [the] defendant as perpetrator which crosse[d] over the line into impermissible testimony." *Id.* In *Streater*, the State asked the expert if his medical findings were consistent with the "*repeated penetration of the defendant's penis into the anal area*[.]" *Id.* (emphasis added). The expert responded: "I think it was consistent with the findings. [The child] may not, *despite having been anally penetrated*, [the child] may not have had any physical findings." *Id.* (emphasis added). Not only did the State, in its question to the expert, identify the defendant as the perpetrator, but it also asked if the expert's findings were consistent with the sexual abuse having occurred. The expert's response, that his findings were consistent with the abuse having in fact occurred, also indicated that the defendant was the perpetrator of that abuse.

In the present case, unlike the situation in *Streater*, the State's question to Ms. Browning did not directly suggest that abuse occurred, or that Defendant was the perpetrator of that abuse. It is clear from Ms. Browning's testimony that she found no physical signs of abuse, and that the absence of physical findings simply meant that either no abuse occurred, or that, had abuse occurred, any injury resulting from that abuse had

healed prior to Ms. Browning's physical examination of the child. For this reason, Ms. Browning's lack of physical findings of abuse was consistent with both abuse having occurred, and no abuse having occurred. Nothing in Ms. Browning's testimony suggests she was agreeing with or bolstering the child's identification of Defendant as the perpetrator of the abuse. Ms. Browning clearly testified that she did not observe any signs of physical abuse; she did not testify that abuse had in fact occurred, and she did not identify Defendant as the perpetrator.

Based on these facts, we cannot say, even assuming error, that the error probably caused the jury to return a different verdict than it would have absent the alleged error. *See Lawrence*, 365 N.C. at 519, 723 S.E.2d at 335. Defendant has failed to show that any error related to the admission of this testimony rises to the level of plain error.

## II.

In Defendant's second argument, he contends the trial court erred by instructing the jury that a witness for the State was a "fact witness," thereby improperly expressing an opinion as to the credibility of the witness' testimony. We disagree.

"The judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury." N.C. Gen. Stat. § 15A-1222 (2013).

Additionally, "[i]n instructing the jury, the judge shall not express an opinion as to whether or not a fact has been proved and shall not be required to state, summarize or recapitulate the evidence, or to explain the application of the law to the evidence." N.C. Gen. Stat. § 15A-1232 (2013). "A defendant's failure to object to alleged expressions of opinion by the trial court in violation of [N.C.G.S. §§ 15A-1222, 1232] does not preclude his raising the issue on appeal." *State v. Young*, 324 N.C. 489, 494, 380 S.E.2d 94, 97 (1989). "'In evaluating whether a judge's comments cross into the realm of impermissible opinion, a totality of the circumstances test is utilized.'" *State v. Fleming*, 350 N.C. 109, 126, 512 S.E.2d 720, 732 (1999) (citation omitted). "A new trial is not required if, considering the totality of the circumstances under which [the instructions] w[ere] made, defendant fails to show prejudice." *State v. Rushdan*, 183 N.C. App. 281, 284, 644 S.E.2d 568, 571 (2007).

Ms. Hurd, a licensed practitioner of "trauma-focused cognitive behavioral therapy[,]" testified concerning a "comprehensive trauma assessment[,]" she conducted of the child. Ms. Hurd also testified about her determination, based on that assessment, that she could help the child. During Ms. Hurd's testimony, the trial court directed the jury to exit the courtroom. During a bench conference, the trial court noted

that Ms. Hurd's testimony was "getting into some worrisome waters." After discussing Ms. Hurd's testimony with both parties, the trial court decided that, when the jury returned, it would "clean this [issue] up a little bit." When the jury returned to the courtroom, the trial court gave the following instruction:

> Ladies and gentlemen, at the beginning of the testimony, this witness testified in part that -- as a part of the protocols at this place that she was describing, that they do something called a trauma assessment. And then if they decide that they can quote, "help someone," they will go forward and do so. Ladies and gentlemen, *that is not meant as a suggestion in any way, and you are not to receive it, in any way, as an opinion by this witness about whether these events occurred or did not occur.*
>
> *This witness is not qualified*, and *she is not competent to testify as to whether or not any event*, be it in Honduras or here in Burke County, *occurred or did not occur.* That is a question for the jury. And so *you're not to consider that testimony as a suggestion that this witness is giving you an opinion about whether or not these events occurred or did not occur.*
>
> . . . .
>
> Secondly, she indicated that, I think briefly but in passing, that maybe she observed or didn't observe, I don't remember behaviors or conduct that may have been or may not have been consistent with PTSD, post-traumatic stress disorder. You are to omit that from your consideration completely. *She's not qualified* to give you that sort of opinion in the courtroom, for you. And so you're not to consider that

> particular testimony. *It is ultimately a question for the jury as to whether or not the allegations here occurred or did not occur*, beyond a reasonable doubt or consistent with whatever instructions I give you at the close of the case.
>
> But *she is what we call a fact witness*. As lawyers, we call her a 701 witness. It doesn't mean anything to you. But *she's a fact witness*, and she's properly here with us. Clearly, she has some engagements, you know, with the young man who testified earlier, and -- sure that both lawyers will be asking this witness questions. So she will be testifying about the -- whatever the interactions she had with him, and everybody sort of understands the instructions I've given you so far, just sort of give you another signal. (Emphasis added).

After closing arguments, the trial court gave, *inter alia*, the following instruction:

> The law requires the presiding judge to be impartial. You should not infer from any statement I have made, any question I may have asked, or anything else I may have said or done during the course of the trial, to suggest to you that any evidence should be believed or disbelieved, that a fact has been proved or not proved, or as to what your findings ought to be. It is your duty to find the facts and to render a verdict reflecting the truth.

In this case, it is clear from the evidence that Defendant has failed to show prejudice. The trial court's instructions to the jury, viewed in the totality of the circumstances, did not express any opinion as to the validity of Ms. Hurd's testimony. There is nothing in the evidence to suggest, contrary to Defendant's argument, that Ms. Hurd "was some sort of special

witness" who "would be giving the jury the true facts of what occurred." To the contrary, the trial court's instructions specifically stated, "you're not to consider that testimony as a suggestion that this witness is giving you an opinion about whether or not these events occurred or did not occur." Even assuming, *arguendo*, the trial court erred in referring to Ms. Hurd as a "fact witness," Defendant has failed to show prejudice. This argument is overruled.

### III.

In Defendant's third argument, he contends "the trial court erred by allowing the State to present evidence of a sexual encounter unrelated to this case that allegedly occurred between Defendant and [a witness.]" We disagree.

A male witness ("the witness") testified that, when he was seventeen years old, Defendant, who was a family friend and mentor, had taken advantage of him and had anally penetrated him after Defendant had given him alcoholic beverages until he had passed out.

Our Supreme Court has held:

> When the trial court has made findings of fact and conclusions of law to support its 404(b) ruling, as it did here, we look to whether the evidence supports the findings and whether the findings support the conclusions. We review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b). We

then review the trial court's Rule 403 determination for abuse of discretion.

*State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012). The trial court found, in determining whether the evidence would be admissible under N.C. Gen. Stat. § 8C-1, Rule 404(b), the probative value of the witness's testimony outweighed its prejudicial effect and was therefore admissible.

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.G.S. § 8C-1, Rule 404(b) (2013). Additionally, Rule 404(b) is "subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Coffey*, 326 N.C. 268, 279, 389 S.E.2d 48, 54 (1990).

> "It is not required that evidence bear directly on the question in issue, and evidence is competent and relevant if it is one of the circumstances surrounding the parties, and necessary to be known, to properly understand their conduct or motives, or if it reasonably allows the jury to draw an inference as to a disputed fact."

*State v. Stager*, 329 N.C. 278, 302, 406 S.E.2d 876, 890 (1991) (citations omitted). "The admissibility of evidence under Rule

404(b) is further constrained by the requirements of similarity and temporal proximity." *State v. Parker*, __ N.C. App. __, __, 756 S.E.2d 122, 126 (2014).

Specifically, Defendant contends the witness' testimony was inadmissible "because it was dissimilar from the crimes for which Defendant was on trial and because any slight probative value was substantially outweighed by the danger of unfair prejudice." We disagree.

The trial court found the witness and the child to be of "similar age," a finding supported by the evidence: the witness was seventeen years of age and the child was fourteen years of age. In addition, the trial court found "similar circumstances with the [the witness' and the minor's] families," a finding supported by the evidence in that Defendant maintained relationships with both the child's and the witness' families. The trial court also found "alignment . . . in terms of anal intercourse," a finding supported by the evidence that Defendant allegedly had anal intercourse multiple times with the child and at one time had anal intercourse with the witness. Lastly, the trial court found "alignment with [Defendant's] counselor or mentor role[]" to the witness and the child, a finding supported by the evidence, where the child referred to Defendant as a father figure, and the witness saw Defendant as a counselor and mentor. We hold that the trial court did not err in concluding

that the witness' 404(b) testimony is similar to the alleged crime, "in terms of showing a pattern and practice, [and] in terms of showing opportunities to take advantage of circumstances and individuals[.]"

Because we determined the witness' testimony is sufficiently similar to the alleged crime, and Defendant does not dispute the temporal proximity, "we now review the trial court's Rule 403 determination for abuse of discretion." *Beckelheimer*, 366 N.C. at 133, 726 S.E.2d at 160.

"Here 'a review of the record reveals that the trial court was aware of the potential danger of unfair prejudice to defendant and was careful to give a proper limiting instruction to the jury.'" *Id.* (quoting *State v. Hipps*, 348 N.C. 377, 406, 501 S.E.2d 625, 642 (1998)). The trial court first heard the witness' testimony during *voir dire*, outside the presence of the jury. The trial court determined the witness' testimony was clearly probative, and had taken the "danger of undue prejudice . . . into account." Additionally, the trial court gave a limiting instruction to the jury.

> Given the similarities between the accounts of the victim and the 404(b) witness and the trial judge's careful handling of the process, we conclude that it was not an abuse of discretion for the trial court to determine that the danger of unfair prejudice did not substantially outweigh the probative value of the evidence.

*Beckelheimer*, 366 N.C. at 133, 726 S.E.2d at 161. This argument is without merit.

IV.

In Defendant's fourth argument, he contends the trial court committed plain error "by allowing the State to present inadmissible victim impact and opinion evidence[.]" We disagree.

When the child was asked why the State had asked the child's mother to leave the courtroom during his testimony, the child responded that he was uncomfortable discussing what Defendant had done to him in front of his mother. The child also testified that, after Ms. Hurd told the child's mother what had happened, the child's mother "went in[to] depression[,]" and "takes medicine for it."

Because Defendant did not preserve this issue for our review, we will conduct our review under the plain error standard. Our Supreme Court has held that, in order to show prejudice sufficient to establish plain error, a defendant has to show "that, absent the error, the jury probably would have returned a different verdict." *Lawrence*, 365 N.C. at 519, 723 S.E.2d at 335.

Specifically, Defendant contends "evidence of the impact of the alleged crimes on [the child]'s mother was clearly

inadmissible during the guilt phase of Defendant's trial, [because] it was not relevant to Defendant's guilt." In addition, Defendant argues "[t]he evidence was also inadmissible because it comprised an opinion that [the child's mother] believed [the child]'s allegations were credible."

Assuming, *arguendo*, the trial court erred by admitting the challenged testimony, Defendant fails to show "that, absent the error, the jury probably would have returned a different verdict." *Id.*

> Simply put, in view of the relatively incidental nature of the challenged statement and the fact that most jurors are likely to assume that a mother will believe accusations of sexual abuse made by her own child[], we cannot conclude that the challenged portion of [the child]'s testimony had any significant impact on the jury's decision to convict Defendant.

*State v. Dew*, __ N.C. __, __, 738 S.E.2d 215, 219 (2013), *disc. review denied*, __ N.C. __, 743 S.E.2d 187 (2013). Because Defendant has failed to show prejudice sufficient to establish plain error, this argument is overruled.

V.

In Defendant's final argument, he contends the trial court erred by failing to find as a mitigating factor that "Defendant had a positive employment history or was gainfully employed." We disagree.

"A sentencing judge must find a statutory mitigating sentence factor if it is supported by a preponderance of the evidence. A mitigating factor is proven when the evidence is substantial, uncontradicted[,] and there is no reason to doubt its credibility." *State v. Kemp*, 153 N.C. App. 231, 241, 569 S.E.2d 717, 723 (2002) (internal quotation marks and citations omitted). However, our Court has held, "a defendant may, pursuant to N.C. Gen. Stat. § 15A-1444(a1), appeal the issue of the sufficiency of the evidence to support his or her sentence even though he or she was sentenced in the mitigated range." *State v. Mabry*, __ N.C. App. __, __, 720 S.E.2d 697, 702 (2011).

During sentencing, "[a] trial judge is given wide latitude in determining the existence of . . . mitigating factors[.]" *State v. Norman*, 151 N.C. App. 100, 105-106, 564 S.E.2d 630, 634 (2002) (quotation marks and citations omitted). In order for Defendant to demonstrate a positive employment history or gainful employment as a mitigating factor, Defendant must present specific details. *Mabry*, ___ N.C. App. at ___, 720 S.E.2d at 704. "An appellate court may reverse a trial court for failing to find a mitigating factor only when the evidence offered in support of that factor 'is both uncontradicted and manifestly credible.'" *Id.* __ N.C. App. at __, 720 S.E.2d at 702 (citation omitted).

Specifically, Defendant argues "all of the evidence showed that Defendant had a positive employment history and was gainfully employed until the time of his arrest." We disagree.

At trial, the testimony tended to show that Defendant came from New Orleans to work at "Aqua Spring" in Morganton, and Defendant sent money to Honduras to support his child. Nevertheless,

> the [Defendant's] employment history testimony does not necessarily establish continuous employment, the numbers of hours [D]efendant was working, or what []he was paid. Given the lack of details regarding [D]efendant's employment history or the quality of h[is] performance, we cannot conclude that the trial court was required to find either that [D]efendant had a positive employment history or that []he was gainfully employed within the meaning of N.C.G.S. § 15A-1340.16(e)(19).

*Mabry*, __ N.C. App. at __, 720 S.E.2d at 704. This argument is without merit.

No error.

Judges ELMORE and DAVIS concur.

Report per Rule 30(e).